UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BARBARA CHERIE SCOUTEN,

                Plaintiff,

        v.

NANCY A. BERRYHILL,[1] Commissioner of
  Social Security,

                Defendant.
_____

**DECISION
and
ORDER**

**17-CV-00902F**
(**consent**)

APPEARANCES:        LAW OFFICES OF KENNETH R. HILLER, PLLC
                              KENNETH R. HILLER, and
                              AMY C. CHAMBERS, of Counsel
                              Attorneys for Plaintiff
                              6000 North Bailey Avenue
                              Suite 1A
                              Amherst, New York 14226

                              JAMES P. KENNEDY, JR.
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York 14202
                                      and
                              PRASHANT TAMASKAR
                              Special Assistant United States Attorney, of Counsel
                              Social Security Administration
                              Office of General Counsel
                              26 Federal Plaza – Room 3904
                              New York, New York 10278
                                      and
                              DENNIS J. CANNING
                              Special Assistant United States Attorney, of Counsel
                              Social Security Administration
                              Office of General Counsel
                              601 E. 12TH Street, Room 965
                              Kansas City, Missouri 64106

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Fed.R.Civ.P. 25(d), Berryhill is substituted for Carolyn W. Colvin as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On June 19, 2018, the parties to this action, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. (Dkt. 13). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on March 11, 2018 (Dkt. 7), and by Defendant on May 22, 2018 (Dkt. 11).

## BACKGROUND

Plaintiff Barbara Cherie Scouten ("Plaintiff"), brings this action under the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on July 5, 2011, for Disability Insurance Benefits under Title II of the Act ("SSDI" or "disability benefits"). Plaintiff alleges she became disabled on April 20, 2010, based on kidney stones, bulging disc in spine, nerve pain, nerve twitching, depression, anxiety, left leg weakness and pain, chronic pain, B-12 deficiency, and joint dysfunction. AR[2] at 303. Plaintiff's application initially was denied on October 14, 2011, AR at 128-24, 162-66, and at Plaintiff's timely request, on February 8, 2013, a hearing was held in Buffalo, New York, before administrative law judge William M. Weir (the ALJ"). AR at 40-73. Appearing and testifying at the hearing were Plaintiff, with legal counsel Kelly Laga, Esq. On September 25, 2013, the ALJ issued a decision denying Plaintiff's claim, AR at 135-51 ("the ALJ's first decision"), which Plaintiff appealed to the Appeals Council which, by Order dated December 19, 2014, remanded the matter to the ALJ for clarification of Plaintiff's RFC. AR at 158-61.

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on February 1, 2018 (Dkt. 5).

Upon remand, the ALJ conducted a new hearing on April 13, 2015, at which appeared Plaintiff, represented by legal counsel Laga, vocational expert Larry Seifert ("the VE"), and medical expert Allan Levine, M.D. ("Dr. Levine"). AR at 74-126. On August 17, 2015, the ALJ again issued an unfavorable decision, AR at 16-30 ("the ALJ's second decision"), which became the Commissioner's final decision on July 14, 2017, when the Appeals Council denied Plaintiff's request for review. AR at 3-5. On September 12, 2017, Plaintiff commenced the instant action seeking judicial review of the ALJ's second decision.

On March 11, 2018, Plaintiff filed a motion for judgment on the pleadings (Dkt. 7) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 7-1) ("Plaintiff's Memorandum"). On May 22, 2018, Defendant filed a motion for judgment on the pleadings (Dkt. 11) ("Defendant's Motion"), attaching The Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Standing Order on Social Security Cases (Dkt. 11-1) ("Defendant's Memorandum"). In further support of Plaintiff's Motion, Plaintiff filed on June 14, 2018, Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 12) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

# **FACTS**[3]

Plaintiff Barbara Cherie Scouten ("Plaintiff" or "Scouten"),[4] born March 1, 1972, was 38 years old as of April 1, 2010, her alleged disability onset date ("DOD"). AR at 333. Plaintiff graduated high school, where she was in regular classes, obtained an Associate's degree in criminal justice, and has an additional year of college studying biology. AR at 319, 644. Plaintiff has past work experience as a lab technician and waitress. AR at 290-300, 304, 319 340-41, 644. Plaintiff is divorced and, as of the second ALJ hearing, lived with her adult daughter, her daughter's boyfriend, and two roommates. AR at 84-85, 107.

It is undisputed that Plaintiff suffers from the severe impairments of Ehler-Danlos Syndrome ("EDS") Type 3 (connective tissue disease), a depressive disorder, an anxiety disorder, a personality disorder, chronic pain syndrome, and obesity. At the second administrative hearing, Plaintiff described her activities of daily living as doing laundry which requires Plaintiff to ascend and descend stairs, preparing simple meals, sweeping once a week, loading lighter dishes into the dishwasher, using a cell phone, dressing and tending to personal care, grocery shopping, reading, occasionally driving short distances, and caring for her cats. AR at 85-88, 112-13. Plaintiff has several braces, including for her back, knees and wrists, and uses a cane when walking. AR at 88-89, 322-26.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.
[4] By the second ALJ hearing, Plaintiff was divorced and used "Chappell" as her last name, AR at 76, which name appears on some of Plaintiff's medical records. *See*, *e.g.*, AR at 396. In the interest of clarity, and because Plaintiff never had her name changed in this action's caption, the court refers to Plaintiff as "Scouten."

As relevant to this action, Plaintiff has sought medical treatment for various physical and mental symptoms including pain in her low back, left hip, both knees, neck, and wrists, decreased range of motion ("ROM") in her low back and neck, and pain, anxiety, and depression. From May 28 to June 6, 2013, Plaintiff was hospitalized at Niagara Falls Memorial Medical Center with suicidal thoughts attributed to her struggles with chronic medical issues and finances. AR at 919-38. With treatment, including education on coping with her illness and obtaining medical treatment, Plaintiff's mood improved. AR at 920-21. Upon discharge, Plaintiff was diagnosed with depressive disorder, but major depression was ruled out. AR at 919.

At the second administrative hearing on April 13, 2015, the ALJ elicited testimony regarding Plaintiff's EDS Type 3 diagnosis from the testifying medical expert, Dr. Levine, who explained EDS is a "collagen disorder" which can cause "orthopedically painful dislocations of joints" which can result in arthritis of the affected joints. AR at 93-94. Dr. Levine testified that EDS Type 3 is the most "benign" type of the syndrome, and observed that Plaintiff's medical records are devoid of any objective evidence of arthritis of any of the claimed affected joints. *Id.* Dr. Levine further testified that despite references to bulging and herniated discs in Plaintiff's spine, the medical records also contain no evidence of any nerve root or spinal cord compromise. *Id.* Following the hearing, the ALJ found Plaintiff retains the residual functional capacity ("RFC"), for a limited range of sedentary work, with limitations to sitting, standing, walking, lifting and carrying, as well as some postural and fine motor limitations, AR at 23, concluding there are several occupations within the national economy which Plaintiff could perform such that Plaintiff is not disabled. AR at 28-29.

## **DISCUSSION**

**1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id.*  "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**2.      Disability Determination**

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement,[6] there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by

---
[6] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

7

the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the Act's insured status requirement for SSDI through December 31, 2015, AR at 21, Plaintiff has not engaged in substantial gainful activity since April 20, 2010, her alleged disability onset date, *id.*, that Plaintiff suffers from the severe impairments of EDS Type 3, depressive disorder, anxiety disorder, personality disorder, chronic pain syndrome, and obesity, *id.*, but that Plaintiff's other medically determinable impairment, *i.e.*, a back impairment, dos not have more than a minimal impact on Plaintiff's ability to do work activities, *id.*, at 21-22, that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpt. P, App. 1, *id.* at 22-23, and that Plaintiff retains the RFC to perform sedentary work limited to, within an eight-hour day, standing for three hours in 45 minute intervals followed by

sitting for two minutes, can walk for two hours in 30 minute intervals followed by sitting for two minutes, sitting for six hours, and lifting and carrying 10 lbs. frequently, and 20 lbs. on occasion. AR at 23. Further, Plaintiff requires use of braces on her lower extremities, is unable to walk on uneven surfaces, occasionally can climb stairs and ramps with a railing, and kneel, crouch, stoop, and bend, but cannot climb ladders, ropes, or scaffolds, crawl, work at unprotected heights, use heavy vibratory machinery, or be exposed to extreme cold, is unable to engage in overhead reaching, but has no limitations with fine and gross manipulations, and should avoid manual twisting, torqueing, or gripping more than 32 lbs., is limited to unskilled jobs, and can tolerate only occasional contact with the general public, but frequent contact with co-workers and supervisors. *Id.* The ALJ concluded Plaintiff is incapable of performing her PRW as a laboratory technician, *id.* at 28, but given Plaintiff's age of 38, which is defined as a younger individual, her education, ability to communicate in English, and RFC, jobs exist in the national economy that Plaintiff can perform, including table worker, ampoule sealer, and bench hand, such that Plaintiff is not disabled. *Id.* at 28-30.

Plaintiff does not contest the ALJ's findings with regard to the first step of the five-step analysis, but argues that at steps two and beyond, the ALJ failed to consider evidence pertaining to numerous impairments, including mental health, neurological, chronic pain, degenerative, joint dysfunction, and genetic disorders, as well as urinary, gynecological, and digestive issues, Plaintiff's Memorandum at 19-22, failed to properly evaluate medical opinions resulting in an RFC unsupported by substantial evidence, *id.* at 22-29, and failed, upon remand after the ALJ's first decision, to comply with the direction of the Appeals Council. *Id.* at 29-30. In opposition, Defendant argues the ALJ

properly considered Plaintiff's severe impairments, Defendant's Memorandum at 22-24, properly weighed the medical opinions of record, *id.* at 24-28, and properly assessed Plaintiff as capable of a limited range of sedentary work. *Id.* at 28-30. In further support of her motion, Plaintiff reiterates the same arguments set forth in arguing the ALJ's RFC findings are unsupported by substantial evidence. Plaintiff's Reply at 1-10. There is no merit to Plaintiff's arguments as substantial evidence in the record supports the ALJ's conclusions.

Insofar as Plaintiff maintains the ALJ failed to consider numerous of Plaintiff's impairments as severe at step 2, Plaintiff's Memorandum at 19-22, as Defendant asserts, Defendant's Memorandum at 22-24, many of the conditions Plaintiff maintains should have been considered at step 2 as severe impairments are either mere symptoms or synonyms of the severe impairments the ALJ considered, or side effects of medication. Defendant's Memorandum at 22-24. In particular, Plaintiff lists as the impairments the ALJ failed to consider as severe a plethora of conditions such as genetic disorders, cognitive defects, myelopathy, ganglion cyst, lithotripsy, and constipation. Plaintiff's Memorandum at 19-22 & nn. 30-35. None of these are, however, separate from those impairments the ALJ considered to be severe impairments, significantly limits Plaintiff's physical or mental ability to perform basis work activities as defined in the relevant regulations. For example, that "suicidal ideation" is not a separate impairment, but a symptom of Plaintiff's depressive disorder is consistent with the fact that it is not noted as a diagnosis on the medical records pertaining to Plaintiff hospitalization in 2013 for suicidal thoughts, *see* AR at 917-38, and that Plaintiff's subsequent medical records do not mention suicidal ideation

demonstrates such symptom did not continue for the requisite 12 months. A reference in the record to "hyperextensible joints" is intended as a symptom possibly indicative of "hypermobility syndrome," AR at 360, 684, which is considered consistent with the EDS diagnosis. AR at 799 (describing Plaintiff's EDS as "benign joint hypermobility syndrome" with clinical manifestations of, *inter alia*, pain, generalized hypermobility affecting both large and small joints, recurring joint subluxations and dislocations, arthralgia, and tender muscle contractures or "trigger points"). *Id.* Furthermore, the ALJ's determination that Plaintiff's back impairment is not severe is consistent with the complete absence in the record of any spinal cord or nerve root compression. AR at 94. Accordingly, the ALJ did not err in failing to consider such symptoms and conditions as severe impairments at the second step of the analysis.

Nor did the ALJ fail to properly evaluate the medical opinions in the record; rather, a plain review of the record establishes the ALJ considered Plaintiff's entire medical record, which is extensively discussed in the ALJ's second decision. In particular, the ALJ considered medical records from neurologist George Kalonaros, M.D. ("Dr. Kalonaros"), who treated Plaintiff for left flank and kidney pain, concluding Plaintiff was neurologically intact, AR at 446-47, Debra Bergfeld, M.D. ("Dr. Bergfeld"), who treated Plaintiff for low back and neck pain, who observed Plaintiff with an essentially normal, nonantalgic and nonataxic gait, and a normal neurologic exam, and assessed ankle, back and sacroiliac pain, sacroiliac joint dysfunction, and lumbosacral neuritis, AR at 457, Mark Perry, M.D. ("Dr. Perry"), who ordered an MRI of Plaintiff's cervical spine, performed June 3, 2014, and showed multilevel disc dessication and annular bulge without focal herniation, sequestered fragment, or spinal stenosis, and no

11

spinal cord impingement or spinal abnormality, AR at 951-54, Kevin J. Gibbons, MD. ("Dr. Gibbons"), who ordered an EMG and nerve conduction study of her cervical and thoracic spine which was performed on June 19, 2015, and showed no cervical compression fracture, spondylolisthesis, moderate/advanced degenerative disc space narrowing, or evidence for dynamic instability, AR at 1056, and a cervical spine MRI performed on July 15, 2015, that was normal. AR at 1063. The ALJ considered medical records from Luther Robinson, M.D. ("Dr. Robinson"), who first diagnosed Plaintiff with EDS Type 3 on April 20. 2012. AR at 796-800. The ALJ considered the medical evidence of Plaintiff's mental impairments, including records from Wonhoon Park, M.D. ("Dr. Park"), who diagnosed Plaintiff with depressive disorder on February 28, 2011, AR at 527-28, records pertaining to Plaintiff's May 28 to June 6, 2013, hospitalization for suicidal ideation, AR at 919-38, consultative psychiatric examinations by Renée Baskin, Ph.D. ("Dr. Baskin"), on August 30, 2011, AR at 644-47, J. Echevarria, M.D. ("Dr. Exhevarria"), on October 7, 2011, AR at 652-69, and Richard Wolin, M.D. ("Dr. Wolin"), on April 20, 2015. AR at 982-88. Also considered by the ALJ were the records of Plaintiff's treating physician, Donald Gullickson, M.D. ("Dr. Gullickson"). AR at 811-42. Significantly, the ALJ is not required to discuss every piece of evidence in the record. *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).

Moreover, in reaching his conclusion in the ALJ's second decision, the ALJ also considered the testimony from the administrative hearing of the medical expert, Dr. Levine, on whom the ALJ relied in determining the impact Plaintiff's EDS had on her ability to perform work activities. *See* AR at 92-100 (Dr. Levine's hearing testimony

12

regarding EDS and the manifestation of its symptoms in Plaintiff).  In particular, Dr. Levine testified that although EDS Type 3 "can result in orthopedically painful dislocations of joints and/or the subsequent development of arthritis as a result of those dislocations, with [*sic*] result in pain, inflammation, and swelling," AR at 93, Dr. Levine found no evidence of such painful swelling, inflammation, or arthritis of any joints despite Plaintiff's assertions of diffuse pain.  *Id.*  Dr. Levine observed, AR at 94, that insofar as Plaintiff complained of a bulging disc in her spine, the only evidence supporting such impairment is a single reference in treatment notes from Buffalo Spine and Sports Institute, dated November 2, 2010, that Paul R. Olizarowicz, RPA C, reviewed an MRI scan without contrast of Plaintiff's lumbo-sacral spine, taken June 11, 2010, which showed disc bulges at L3-4 and L4-5, AR at 461, but the MRI report is not in the record.  Dr. Levine further observed the absence in the record of any evidence of nerve root or spinal cord compromise, AR at 94, and attributed Plaintiff's back and neck pain to "mild degenerative changes."  *Id.*  X-rays taken October 31, 2011, showed Plaintiff's left ankle, knees and hip were normal and did not show any arthritic changes, although some minimal displacement of the kneecaps was consistent with the EDS diagnosis, *id.* at 94-95, and Plaintiff's carpal tunnel syndrome was not shown in an EMG to be severe, with Plaintiff reporting on March 6, 2012, that the symptoms has largely resolved.  *Id.* at 95-96.  According to Dr. Levine, the whole body bone scan Plaintiff underwent on March 9, 2010, which was normal, is "an extremely sensitive, although pretty non-specific type of test" on which "even mild arthritis" would be detected.  *Id.* at 96 (citing AR at 413).

Furthermore, the ALJ's conclusion regarding Plaintiff's RFC is entirely consistent with Dr. Levine's medical testimony, AR at 98-100, and largely consistent with Dr. Gullickson's assessment dated January 23, 2013, AR at 873-78, diagnosing Plaintiff with anxiety and lower lumbar tenderness. Although Dr. Gullickson found Plaintiff to be "incapable of even 'low stress' jobs," *id.* at 875, and Dr. Wolin, on April 20, 2015, assessed Plaintiff as unable to maintain regular attendance at work, make simple work-related decisions, travel to unfamiliar places, use public transportation, or complete a normal workday or workweek without interruptions from her psychologically-based symptoms, particularly, her history of depression and anxiety characterized by panic attacks, AR at 982-88, the ALJ found such assessments as unsupported by the other evidence in the record pertaining to Plaintiff's mental impairment. AR at 28. In particular, Dr. Park found Plaintiff to have "no major functional deficit," AR at 527, Dr. Baskin assessed that Plaintiff, once her adjustment disorder stabilized, might consider vocational training and rehabilitation, *id.* at 647, and Dr. Echevarria assessed Plaintiff with only mild to moderate limitations, *id.* at 666-67, opining that Plaintiff "retains the capability to perform simple work in a low contact setting." *Id.* at 664. The standard of review of the Commissioner's decision is "a very deferential standard of review – even more so than the 'clearly erroneous' standard." *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)). "The substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise.*'" *Id.* (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (italics added and quotation marks omitted). In the absence of legal error, and provided there is substantial

evidence supporting the Commissioner's determination, the decision must be upheld even if the record also contains substantial evidence supporting the claimant's position. *Perez v. Chater*, 77 F.3d 41, 46-47 (2d Cir. 1996). Accordingly, the ALJ did not improperly weight the medical opinions of record, and the RFC with which the ALJ assessed Plaintiff is supported by substantial evidence in the record.

Insofar as Plaintiff challenges the ALJ's determination that Plaintiff's subjective complaints were not credible, Plaintiff's Memorandum at 28, Plaintiff's Reply at 1, assessment of credibility is a function of the ALJ, and not the court, *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 35 (2d Cir. 2013), and a claimant's testimony as to subjective complaints is entitled to great weight only when consistent with and supported by objective medical evidence, *Hall v. Astrue*, 677 F.Supp.2d 617, 630 (W.D.N.Y. 2009), not found in the instant case, as discussed, *supra*. Furthermore, "[a] lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." *Barry v. Colvin*, 606 Fed.Appx. 621, 622 (2d Cir. Apr. 21, 2015).

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 7) is DENIED; Defendant's Motion (Dkt. 11) is GRANTED. The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: February 5, 2019
          Buffalo, New York